J-A15011-25

2025 PA Super 163

| IN THE MATTER OF: S.H.D.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: N.N., MOTHER | : | No. 1813 MDA 2024 |

Appeal from the Decree Entered November 15, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  110-AD-2024

| IN THE MATTER OF: D.H.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: N.N., MOTHER | : | No. 1814 MDA 2024 |

Appeal from the Decree Entered November 15, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  111-AD-2024

| IN THE MATTER OF: J.Q.N.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: N.N., MOTHER | : | No. 1815 MDA 2024 |

Appeal from the Decree Entered November 15, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  112-AD-2024

| IN THE MATTER OF: E.T.V.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: N.N., MOTHER | : | No. 1816 MDA 2024 |

Appeal from the Decree Entered November 15, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  113-AD-2024

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                    **FILED: JULY 28, 2025**

N.N. ("Mother") appeals from the decrees that terminated involuntarily her parental rights to her four children, S.H.D.N., born in September 2010; D.H.N., born in August 2011; J.Q.N.N., born in August 2013; and E.T.V.N., born in April 2017.[1]  We affirm.

At the outset, we observe that Mother natively speaks Vietnamese and understands very little in the English language.  She has required interpretive services throughout the duration of these cases.  As will be seen, this language barrier has at times hindered her ability to comply with her case objectives.

The Dauphin County Social Services for Children and Youth ("DCCY") first became involved with Mother in August 2013, based upon concerns for her mental health.  The agency opened services in May 2014 because there was a lack of medical care for J.Q.N.N., who has a medical condition that requires "neurology, as well as gastroenterology, regular [doctor] visits and regular weight checks[.]"  N.T. Hearing, 11/13/24, at 18.  S.H.D.N., D.H.N., and J.Q.N.N. were briefly placed in foster care in October of 2014, but were returned to Mother in April 2015.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] This Court consolidated Mother's appeals *sua sponte*.  We note that the orphans' court also terminated the parental rights of the unknown father as to each child.  No appeal has been taken from those decrees.

DCCY received two new referrals in 2017, following E.T.V.N.'s birth: first, in May for inadequate baby supplies for E.T.V.N.; and then in November because J.Q.N.N. had been diagnosed with failure to thrive and was not receiving proper medication. J.Q.N.N. was again placed in foster care for approximately one month before Mother regained custody.

The agency most recently reopened services in 2020, due to S.H.D.N.'s extensive truancy. On September 10, 2022, she ran away and reported physical abuse by Mother. Her wrists exhibited restraint marks, and she had bruising on her abdomen and legs in various stages of healing. She also disclosed that she had required staples two years prior because Mother had hit her on the head with a glass bowl. DCCY found both reports indicated.[2] The Commonwealth criminally charged Mother based upon these allegations, and those cases remained pending at the time of the termination hearing.

_____

[2] We have explained:

> An indicated report is one wherein the determination relies on . . . the county agency's own assessment that their investigation revealed substantial evidence of the alleged abuse by a perpetrator exists based on available medical records, the child protective services investigation, or an admission of the acts of abuse by the perpetrator.

*Interest of M.M.*, 302 A.3d 189, 197 (Pa.Super. 2023) (cleaned up).

All four children were adjudicated dependent and placed into foster homes.[3] When they entered care, the children were not up to date medically or dentally but have since had those lapses addressed. School attendance problems have likewise been remedied. Additionally, all four children take part in therapy.

Mother attended supervised visits every other week for two hours at DCCY's offices. Mother denied that she ever physically disciplined her children and has not addressed her mental health and financial concerns. Since Mother had completed other parenting programs before the alleged abuse, DCCY ordered Mother to complete an evidence-based parenting program through JusticeWorks in light of her continued disciplining problems. Unfortunately, that program could not be offered to Mother, nor completed by her, because JusticeWorks lacked a Vietnamese-language interpreter. No other evidence-based program was pursued by Mother or DCCY as a replacement.

Throughout its involvement, DCCY has found Mother to be incapable of self-sufficiency. *Id*. at 32. She remains unemployed and fully reliant on other family members, including J.N., an elder sibling of the children, as well as

_____

[3] S.H.D.N. was placed in a pre-adoptive foster home, while the remaining three siblings were placed together in a different foster home. The foster parents responsible for the three youngest children are a pre-adoptive resource for E.T.V.N. However, they are not a pre-adoptive resource for J.Q.N.N. because she needs lifelong care, or for D.H.N. as he desired a better fit for himself. At the time of the termination hearing, the agency was actively looking for a pre-adoptive foster home for D.H.N. and noted that better permanency planning would be possible for J.Q.N.N. following termination. *See* N.T. Hearing, 11/13/24, at 21-23.

DCCY, for translation, transportation, and assistance with reinstating food stamps and medical insurance for the children. *Id*. at 19-21.

Given her lack of progress, DCCY filed petitions to terminate Mother's parental rights as to all four children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The court held a termination hearing, at which DCCY presented testimony from casework supervisor Samantha Weirich.[4] J.N. testified in Mother's defense regarding her desire to achieve her case objectives and the obstacles she faced in doing so as a result of not speaking or understanding the English language. During the hearing, Mother had the assistance of a Vietnamese-English language translator. Two days later, the court conducted three *in camera* interviews of the children: one with S.H.D.N., another with D.H.N., and a joint meeting with J.Q.N.N. and E.T.V.N. Notably, no attorneys were present during these interviews. That same day, the court granted the petitions terminating Mother's parental rights as to S.H.D.N., D.H.N., J.Q.N.N., and E.T.V.N.

This timely appeal followed, with all parties complying with the requirements of Pa.R.A.P. 1925. Mother raises four issues for our consideration:

> A. Whether the trial court violated Mother's right to due process by failing to allow her to cross examine witnesses who provided

---

[4] Each child was dually represented by Joy Waters Fleming, Esquire, as guardian *ad litem* ("GAL") and legal counsel after the court accepted Attorney Fleming's representation that no conflict existed between their legal and best interests.

testimony the court relied on to engage in a best-interest determination pursuant to 23 Pa.C.S. § 2511(b).

B. Whether the [orphans'] court committed an error of law and/or abuse of discretion terminating Mother's parental rights when DCCY failed to meet its burden of proving by clear and convincing evidence that Mother showed a settled intent to relinquish parental claim to her children, or refused or failed to perform parental duties for a minimum of six months prior to the filing of the petition for involuntary termination, pursuant to 23 Pa.C.S. § 2511(a)(1).

C. Whether the [orphans'] court committed an error of law and/or abuse of discretion terminating Mother's [parental] rights pursuant to 23 Pa.C.S. § 2511(a)(2), (a)(5), and (a)(8) because DCCY was unable to meet its burden of providing clear and convincing evidence that Mother was unable, unwilling, or incapable of remedying the conditions or causes which led to the removal of the [c]hildren from Mother's care.

D. Whether DCCY's failure to provide a translated petition in a termination of parental rights case is a violation of due process under Amendment 14, as it denied [M]other the ability to fully participate in the proceedings and defend her rights effectively.

Mother's brief at 4-5 (parenthetical numbering omitted, citations altered, reordered for ease of disposition).

Mother's first claim has multiple parts. Initially, she alleges that the court erred in failing to provide her with adequate notice of the court's *in camera* interviews with the children pursuant to Pa.R.O.C.P. 15.4(3)(a). **See** Mother's brief at 48-50, 53; **id**. at 54 ("Verbally [*sic*] stating the children would be interviewed without providing time, location, or means of this hearing fails to meet statutory requirements for proper notice."). We have held that conducting a termination hearing without affording the parent the requisite notice violates due process and requires this Court to vacate the

termination decree and remand for further proceedings. ***See Interest of***

***L.T.R.***, 317 A.3d 614, 2024 WL 1234944, at *5 (Pa.Super. 2024) (non-

precedential decision).

The following rules detail the notice to which parents are entitled before

involuntary termination hearings:

> (3)(A) For a proceeding under Rule 15.10 (relating to Involuntary Termination of Parental Rights), every person entitled to notice as provided in 23 Pa.C.S. § 2513(b) shall be provided with notice of the hearing by one of the following means:
>
>> (i) personal service;
>>
>> (ii) registered or certified mail with delivery restricted to the addressee only and a return receipt requested mailed to the person's residence, location where he or she is known to be staying, or business where he or she is known to be currently employed; or
>>
>> (iii) such other means including electronic transmission as the court may require under the facts of the individual case.
>
> (B) If the identity and location of the person whose parental rights are sought to be involuntarily terminated are known or can be determined after reasonable investigation, a copy of the petition for involuntary termination of parental rights shall be attached to the notice required by 23 Pa.C.S. § 2513(b).

Pa.R.O.C.P. 15.4. Courts must construe these rules liberally, "to secure the

just, timely, and efficient determination of every action or proceeding to which

they are applicable[.]" Pa.R.O.C.P. 1.2. Further, the orphans' "court at every

stage of any action or proceeding may disregard any error or defect of

procedure that does not affect the substantive rights of the parties in interest."

*Id*. Section 2513 of the Adoption Act, which is referenced in Rule 15.4, provides in relevant part:

> **(a) Time.**--The court shall fix a time for hearing on a petition filed under [§] 2512 (relating to petition for involuntary termination) which shall be not less than ten days after filing of the petition.
>
> **(b) Notice.--**At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require.

23 Pa.C.S. § 2513.

In the present matter, Mother does not claim that she lacked proper notice of the November 13, 2024 termination hearing. Rather, she assails the court's in-court announcement at that hearing that it would interview the children because it was inconsistent with the type and timing of notice set forth above. Even assuming that those provisions governed notice for interviews of children in connection with termination proceedings and the court's needs and welfare analysis, it was incumbent upon Mother to lodge an objection to what she deemed inadequate about the notice at the time it was orally provided on the record. Since she did not, she has waived her challenge to the court's manner of notice for the *in camera* interviews. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Therefore, Mother is not entitled to relief based upon how the court informed her of its interviews with her children.

In tandem with the notice complaint, Mother attacks the court's failure to protect her due process rights and those of the children because their respective legal representatives were not present at the *in camera* interviews. *See* Mother's brief at 48-51. She insists that the court's failure to ensure the presence of Attorney Fleming, who acted as the children's GAL and counsel, resulted in structural error. *Id*. at 50. Based upon these violations, Mother asks us to vacate the termination decrees.

The orphans' court did not address these arguments in its Rule 1925(a) opinion because it misunderstood Mother's contention in her concise statement as a complaint about cross-examination at the November 13, 2024, hearing. *See* Statement of Matters on Appeal, 12/16/24, at ¶ 3(d) ("Whether the court violated Mother's right to due process by failing to allow her to cross examine witnesses who provided testimony the court relied upon to engage in a best-interest determination pursuant to 23 Pa.C.S. § 2511(b)" (citation altered)). Since Mother had the opportunity to cross-examine DCCY's casework supervisor at the termination hearing, the court opined that this claim lacked merit. It did not address Mother's inability to ask the children questions during the *in camera* interviews, nor the absence of the children's counsel or Mother's counsel at those interviews.

Having the benefit of Mother's brief, which includes a detailed argument regarding these allegations, DCCY counters that Rule 1925(b) waiver prohibits our review because Mother's concise statement did not plainly divulge that

she was challenging the absence of counsel, either Mother's or children's, at the interviews. *See* DCCY's brief at 46. Alternatively, the agency alleges that the orphans' court only interviewed the children "as part of a permanency review hearing, held immediately after the termination proceeding[.]"[5] *Id*. at 46. According to DCCY, the court committed no error in conducting a hearing regarding the permanency plan, as the court could divorce the dependency proceedings from the termination considerations. *Id*. at 46-47. The agency offered no discussion as to whether it was error for all counsel to be absent.

Attorney Fleming initially joined DCCY's brief. Upon direction from this Court, she filed a brief addressing this issue. Therein, she indicated that the children's legal interests were vindicated by her representation prior to and at the November 13, 2024 termination hearing. *See* Children's brief at 13 (noting that counsel "was present and actively participated in the evidentiary hearing[,] placed the children's wishes on the record, confirmed prior consultation with them, and concurred with the [a]gency's recommendation to terminate parental rights"). However, she did not explain her decision not to attend the interviews and argued that Mother waived the complaint by

---

[5] Contrary to its assertion, the interviews did not commence immediately after the termination hearing; they were held two days later. Moreover, they were not solely part of the permanency proceedings, as they were clearly conducted, at least in part, to inform the court's § 2511(b) analysis. We caution DCCY to be more careful in reciting purported facts to this Court.

failing to object or include it clearly in her Rule 1925(b) statement. *Id*. at 14-15.

Our review reveals that the orphans' court provided the following notice at the termination hearing regarding its intention to interview the children:

THE COURT: I will note that the children are not present this morning. The Court received a request to interview the kids or speak with the kids on Friday. We granted that.[6] So we will be communicating with the children, but their GAL is present and will be able to state any information that she received from them prior to me having that opportunity.

. . . .

All right. I am going to speak with the children and so we're gonna defer our decision until we're able to do that so that we can make a decision on all the matters after I've spoken with the children.

ATTORNEY FLEMING: I was not invited to your meeting with the children on Friday. So may I place my recommendation on the hearing record?

THE COURT: You certainly may. But you can be invited if you'd like to be present, but you can also place your recommendation on the record.

ATTORNEY FLEMING: May I hear [DCCY]'s recommendation first?

. . . .

Your Honor, I'm in agreement with that recommendation [to terminate]. I believe it is in the children's best interest for termination of parental rights to occur. I've consulted with them about next steps regarding a post termination sort of transition. They indicated to me that they would not like to return home.

---

[6] We have been unable to locate in the certified record the request or the order granting it.

THE COURT: And since I'm gonna see the children and render a decision, I'll give you a chance to argue anything you'd like today, either side. So go right ahead.

. . . .

Thank you. And the record will technically remain open until we speak with the children.

N.T. Hearing, 11/13/24, at 6, 78-79, 83.

Although the court did not explicitly invite Mother's counsel, her counsel neither objected to the omission nor requested to attend. Accordingly, Mother has waived her challenge to counsel's absence from the interviews, and we will not address that portion of this issue further. *See* Pa.R.A.P. 302(a).

Turning to the remaining due process complaint, the above exchange demonstrates that the orphans' court did not prohibit children's counsel from attending the *in camera* interviews; rather, it extended an invitation.[7]

---

[7] We have explained in the dependency context that representation of a child's legal interests is thwarted when counsel is excluded from an *in camera* interview conducted as part of those proceedings:

[T]he trial court precluded Child's counsel from participating in the questioning of Child at a critical juncture in the dependency proceedings, *i.e.*, the final opportunity for Child to address the trial court prior to its ruling on reunification and discharge. This procedure deprived Child of the advice and support of the legal representation that was conferred upon him at all stages of the dependency proceedings as a matter of law.

***Interest of J.F.***, 308 A.3d 1252, 1258 (Pa.Super. 2024) (cleaned up). The same concerns hold true in involuntary termination proceedings. *Id*. at 1260 (recognizing that while "dependency proceedings do not necessarily implicate
*(Footnote Continued Next Page)*

Consequently, Mother's claim challenging counsel's failure to attend the interviews implicates not trial court error, but the adequacy of counsel's advocacy. *See Interest of D.N.G.*, 230 A.3d 361, 365-66 (Pa.Super. 2020) (reiterating that any party may raise a challenge to § 2313(a) representation and this Court may review such a claim even if raised for the first time on appeal). We have held that legal representation for children in termination proceedings requires not only "talking to the child client and reporting the child's preferences to the court," but also "advocat[ing] on behalf of [the child] and provid[ing] zealous client-directed representation of [the child]'s legal interests." *Id*. at 366 (cleaned up).

_____

the same gravity of consequence present in" contested termination matters, "critical rights are still at issue" (cleaned up)).

Therefore, had the court barred Attorney Fleming from attending the interviews, we would have been compelled to vacate the underlying decrees and remand for new termination proceedings based upon the structural error of depriving the children of their right to legal counsel. *See Interest of H.H.N.*, 296 A.3d 1258, 1266 (Pa.Super. 2023) (noting that dismissing counsel from one of the termination hearings constitutes "the deprivation of Children's right to counsel [and] is a structural error" (cleaned up)); *In the Interest of K.-M.L.*, 2025 WL 1455675, at *5 (Pa.Super. 2025) (non-precedential decision) (finding structural error where the court dismissed child's counsel in the middle of the termination hearing, even though it was at counsel's request and after counsel conveyed child's preferences, because child "was deprived the benefit of representation of legal counsel" during the parents' testimony and closing arguments). However, despite Mother's framing of the issue as error by the orphans' court in not ensuring the presence of all attorneys, *see* Mother's brief at 49-51, the orphans' court appointed counsel for the children and did **not** exclude counsel from the interviews. Therefore, we are not confronted with structural error.

- 13 -

Here, Attorney Fleming clearly represented the children's legal interests at the termination hearing. While we observe with dismay that neither the record nor Attorney Fleming's brief provides any explanation as to why she failed to attend the *in camera* interviews, Mother's argument is premised upon error by the orphans' court, not upon the efficacy of Attorney Fleming's legal representation. Critically, we may not manufacture that argument for her. ***See In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (cleaned up)); ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1237 (Pa. 2020) (rejecting "the argument that appellate courts should review *sua sponte* whether a GAL/Counsel sufficiently advocated for the child's legal interests"). Accordingly, Mother has likewise waived this final portion of her first issue.

We next turn to the general principles governing our review of termination decrees:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a

- 14 -

different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up).

"The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Moreover, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Section 2511 of the Adoption Act sets forth the following bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re Adoption of B.G.S.*, 245 A.3d 700, 705 (Pa.Super. 2021) (cleaned up).

We have defined clear and convincing evidence as that which is so "clear,

- 15 -

direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up).

To affirm a termination decree, we need only agree with the trial court that any one subsection of § 2511(a), as well as § 2511(b), is met. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Thus, we address Mother's first two issues together, focusing solely upon § 2511(a)(8) and (b),[8] which provide as follows in relevant part:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

>> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

>>         . . . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

---

[8] Mother does not contest the § 2511(b) findings. Therefore, we consider this subsection only insofar as it impacts our § 2511(a)(8) analysis.

- 16 -

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Pursuant to § 2511(a)(8), the agency was required to prove three elements as to each child: "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009) (cleaned up). The second prong requires the court to "determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [the agency] supplied over a realistic time period." *In re Adoption of K.J.*, 936 A.2d 1128, 1133 (Pa.Super. 2007) (cleaned up).

Notably, this subsection "does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [the agency's] services." *Id*. (cleaned up). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is **imminent** at the time of the hearing." *In re I.J.*, 972 A.2d at 11 (emphasis added). It is axiomatic that "a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. We cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *Id*. at 11-12 (cleaned up).

- 17 -

Presently, Mother agrees that the twelve-month timeframe has been satisfied and does not expressly challenge whether termination was in the best interests of each child. Instead, she argues that DCCY failed to prove by clear and convincing evidence that the conditions leading to placement still existed. *See* Mother's brief at 36. She maintains that the sole reason provided in the dependency petition for removal was alleged physical abuse, and "[n]o evidence was provided that inappropriate discipline or physical abuse continued beyond the date of removal." *Id*. at 37.

The orphans' court explained its findings thusly:

> Perhaps the ultimate concerns leading to foster care placement for the children were Mother's abuse of the children and inappropriate physical discipline of the children. According to casework supervisor Weirich's testimony, throughout the life of the instant dependency case, Mother has refused or at least has been unable to acknowledge her past inappropriate physical disciplinary tactics with the children. This raises significant concerns as to whether she would continue these types of abusive tactics should she maintain parental rights to the children. To the extent that Mother's behavior towards the children arises from mental health issues, the testimony established that Mother has not taken adequate steps to address these mental health concerns. While Mother underwent a psychological evaluation on April 20, 2024, Mother has not participated in any individual outpatient therapy, despite the evaluation recommending that she do so. Moreover, one of Mother's court-established service objectives was to participate in a psychiatric consultation and determine which medication would be appropriate. Mother, however, has not sought any psychiatric services, including a psychiatric evaluation. Also, while we acknowledge that Mother has completed several parenting programs Mother has not comported with her established service objective of completing an **evidence-based** parenting program. We also highlight casework supervisor Weirich's testimony that despite Mother's completion of an "intensive" parenting program several years prior to the children's placement into foster care, such parenting program did

not prevent Mother from abusing the children in the future, questioning whether a parenting program would be efficacious at preventing further abuse or inappropriate discipline by Mother towards the children.

In addition to the abuse concerns, the evidence presents significant concerns about Mother's ability to provide for the children financially and properly handle their medical and educational needs.

. . . .

Finally, which regard to the children's educational needs, the court has serious concerns about whether Mother would be able to ensure that the children even attend school, let alone thrive in school. Before they were placed in foster case, repeated agency intervention was required to address the children's truancy and Mother's inability or refusal to ensure that the children attended school on a regular basis.

Orphans' Court Opinion, 1/16/25, at 20-22 (cleaned up, emphasis in original).

Our review of the record confirms the court's findings, and we discern no abuse of discretion in its analysis of § 2511(a)(8). Mother had not remedied the conditions leading to the placement of her four children in the more than twelve months they were in foster care, and at the time of the termination hearing it was apparent that reunification was not imminent. *See In re I.J.*, 972 A.2d at 11. Moreover, it was plain from the testimony that the children's needs and welfare, in particular their educational, emotional, and medical needs, were best served by terminating Mother's parental rights. Accordingly, we affirm the court's determination that DCCY proved by clear and convincing evidence that Mother's conduct warranted termination of her parental rights as to each of the four children pursuant to § 2511(a)(8).

Lastly, Mother contends that she was denied due process because the termination petition and relevant case documents were not translated into Vietnamese. *See* Mother's brief at 37. She notes that Pennsylvania Rule of Judicial Administration 261 provides a policy of language access to those, such as her, that are Limited English Proficient ("LEP"), which includes a notice of language rights to be sent with every hearing notice in both civil and criminal matters.[9] *Id*. at 39. Further, she asserts that "being denied meaningful

_____

[9] Specifically, Rule 261 provides as follows:

**A.** It is the policy of the UJS to provide meaningful language access to the courts for all individuals who are [LEP] or deaf or hard of hearing ("DHH") to ensure that such persons have due process and equal access to all judicial proceedings, court services, programs, and activities. Ensuring meaningful language access means providing timely, accurate, and effective language services at no cost to persons who are LEP or DHH, whether requested or not.

**B.** Courts must review data concerning the languages for which interpreters are most frequently requested in their courts and translate vital documents in accordance with the policy and procedures established by the Administrative Office. Oral translation of documents shall be provided when a translated document is not available.

**C.** A qualified interpreter shall be provided for any court services, programs, or activities involving an LEP person and in every judicial proceeding where the LEP person is one of the following:

1. a principal party in interest.

2. any person when a court finds good cause for provision of interpreter services.

*(Footnote Continued Next Page)*

access to the court procedure" violated the Civil Rights Act and Americans with Disabilities Act. *Id*. at 42-43. While she concedes that the court properly ensured she had a certified interpreter at the termination hearing, she avers court error because the record was not translated beforehand for Mother to prepare a defense. *Id*. at 45-46.

DCCY, meanwhile, argues that Mother waived these complaints because she did not raise them in the orphans' court. *See* DCCY's brief at 39. Moreover, it asserts Rule 1925(b) waiver because her statement did not include an allegation that Mother was denied access to court procedures or that her disability rights were violated. Rather, the statement focused on DCCY's purported violation of her due process rights by failing to provide her with translated termination petitions. *Id*. Alternatively, DCCY proffers that Mother has had court-appointed counsel throughout these proceedings, and that her limited English language abilities are not commensurate with a disability under the Americans with Disabilities Act. *Id*. at 40. As noted by

---

**D.** A qualified interpreter shall be provided for any court services, programs, or activities involving a DHH person and in every judicial proceeding where the DHH person is one of the following:

1. a principal party in interest.

2. any person, including a spectator, who seeks a reasonable accommodation.

Pa.R.J.A. 261. *See also* 42 Pa.C.S. § 4412(a) ("Upon request or *sua sponte*, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed[.]").

DCCY, counsel was obligated to keep Mother informed of the petitions and the proceedings. *Id*. at 44 (citing Pa.R.Prof.C. 1.4 (governing a lawyer's duty to communicate with his or her client and to keep the client informed)).

This Court reviews decisions regarding interpretive services for an abuse of discretion. *See Interest of R.C.-G.*, 292 A.3d 582, 590 (Pa.Super. 2023). Here, the orphans' court addressed Mother's claim regarding the lack of translation services thusly:

> [B]ased on all of the assistance she was provided in this case, including the assistance of the [a]gency prior to the hearing and the assistance of counsel and the interpreter at the November 13, 2024 hearing, we maintain that Mother was not denied the ability to fully participate in the proceedings and defend her rights effectively at the hearing, and the alleged failure to translate the [p]etition itself does not constitute a violation of due process considering the totality of the circumstances of this case.

Orphans' Court Opinion, 1/15/25, at 25.

We discern no abuse of discretion. Mother had the benefit of a certified interpreter during the termination hearing, and she was represented by counsel throughout the dependency and termination proceedings. Moreover, J.N. assisted Mother, when necessary, in communicating with DCCY, and therefore could have conveyed a demand for translation of any documents to DCCY, counsel, or the orphans' court. Ms. Weirich explained that DCCY utilized LanguageLine when communicating with Mother and to translate her family service plan, each child's permanency plan, and any court-ordered objectives. *See* N.T. Hearing, 11/13/24, at 40-42. If counsel believed that Mother did not receive adequate interpretive services to understand the

nature of the underlying matters, counsel should have raised the issue with the orphans' court. Since no objection was lodged, and the court properly ensured the assistance of an interpreter at the evidentiary hearing, Mother's claim fails. *See* Pa.R.A.P. 302(a); Pa.R.J.A. 261.

Based on the foregoing, we affirm the decrees terminating Mother's parental rights as to S.H.D.N., D.H.N., J.Q.N.N., and E.T.V.N.

Decrees affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/28/2025</u>